**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 1, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROLLIE P. BROOKS,

      Defendant - Appellant.

No. 04-3218

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 03-CR-20082-01 JWL)**

Constance Y. Singleton, Houston, Texas, for Defendant-Appellant.

Terra D. Morehead, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the briefs), District of Kansas, for Plaintiff-Appellee.

Before **HENRY**, **McKAY**, and **HARTZ**, Circuit Judges.

**McKAY**, Circuit Judge.

Employees at a Target store in Lawrence, Kansas, became increasingly suspicious of the frequency with which Mr. Rollie Brooks purchased pseudoephedrine cold pills (which can be used to manufacture methamphetamine).

During a forty-eight-day period, Mr. Brooks bought a total of 912 Target-brand pseudoephedrine pills, purchasing two boxes of pills on each visit.[1] The Target store was a participant in the Drug Enforcement Administration's "Meth Watch" program, which encourages retail businesses selling cold pills containing pseudoephedrine to monitor individuals purchasing large quantities of such pills.

The Target store employees alerted the Kansas Police Department Drug Enforcement Unit. On separate occasions during a period of more than one month, Drug Enforcement officers observed Mr. Brooks purchasing the pseudoephedrine pills at Target and followed him to his car and home, ran a criminal history check which showed two prior arrests for possession of methamphetamine, and watched videotaped Target footage of Mr. Brooks purchasing pills. The police eventually obtained a search warrant, issued out of Franklin County, Kansas, for Mr. Brooks' home and car. Officers departed to search Mr. Brooks' home, an RV located on a thirty-acre farm owned by the mother of Mr. Brooks' friend, Randall Penner. The RV was hooked up in the corral of the farm. Mr. Penner's RV home was also located on the property, as was a workshop, known as the "red barn." At the time the police searched the property, Mr. Brooks' white pickup truck was parked there.

---

[1]In order to consume all of the pills purchased during this time period, an individual would need to ingest nineteen tablets each day.

The search yielded the following from the back of Mr. Brooks' pickup: a store receipt for hydrogen peroxide and Diamond King matches,[2] reddish stained coffee filters,[3] and empty bottles of HEET (anti-freeze). From Mr. Brooks' RV, the police collected: a 500-milliliter flask inside a pistol case, a yellow funnel with a powder residue, a glass jar filled with a liquid, and several plastic containers of liquid – on each of which laboratory analysis indicated the presence of methamphetamine as well as other chemicals used in its manufacture (including phenal acetone, sodium, and hydrochloric acid). The police also came across two guns in Mr. Brooks' RV, a .357 magnum Ruger revolver under his pillow and a .357 magnum Colt revolver on a shelf. Mr. Brooks, however, was nowhere to be found. Later that day, the Douglas County authorities located him driving and conducted a felony stop. They arrested Mr. Brooks without a warrant and first searched and then impounded his 1963 Chevy Impala. Inside the car they found three baggies containing a combined total of .92 grams of methamphetamine, and they found two guns in the trunk.

Both Mr. Brooks and his neighbor friend, Mr. Penner, were charged in two separate cases in Kansas state court. Mr. Penner pleaded guilty to the state charge

---

[2]Red phosphorus (used in production of methamphetamine) is obtained from striker plates on match books.

[3]Laboratory analysis indicated the presence of methamphetamine, phenal acetone, and iodine.

-3-

of possession of drug paraphernalia and was sentenced to twelve months' probation. The paraphernalia which was the subject of his plea included the items for which Mr. Brooks was charged in his separate state case. The United States Attorney first filed a one-count indictment against Mr. Brooks, charging him with possession of an unregistered firearm found in his car at the time of arrest. Later, a superseding fifteen-count indictment was filed in federal court upon which Mr. Brooks' conviction is based and from which he now appeals.

In a February 2004 jury trial, Mr. Brooks was convicted of thirteen counts, including unlawful possession of an unregistered firearm under 26 U.S.C. § 5861(d), manufacture of five or more grams of methamphetamine under 21 U.S.C. §841(a)(1), and unlawful possession of a firearm during and in relation to a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A). He was sentenced to 180 months' incarceration. Mr. Brooks now seeks review based on several claims, including a number of insufficiency of evidence and suppression claims. He also argues the following: it was error to apply Criminal History Category IV in determining his sentence, where the proper category was III; his attorney's failure to file a motion to suppress evidence obtained through the search warrant as well as his failure to file objections to the evidence of Mr. Brooks' arrest in St. Charles County constituted ineffective assistance of counsel; the trial court erred when it based Mr. Brooks' sentence on drug quantities not determined by the jury,

in violation of his Sixth Amendment rights; and the trial court erred when it included both Counts Four and Five in the judgment as counts of conviction, where Count Four was a lesser included crime covered by Count Five.

At the close of the government's evidence, Mr. Brooks moved for judgment of acquittal, which the district court denied. Mr. Brooks also filed a post-trial motion regarding sufficiency of the evidence which the district court also denied in a Memorandum and Order. Aplt. App. at 20. He now requests this court to review whether there was sufficient evidence to support a conviction (1) for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), (2) for the manufacture or attempted manufacture of methamphetamine, and (3) for the possession of pseudoephedrine with reasonable cause to believe it would be used to manufacture methamphetamine.

We review de novo the issue of whether there is sufficient evidence to sustain a jury verdict. *United States v. Voss*, 82 F.3d 1521, 1524-25 (10th Cir. 1996). We must examine "the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir. 1993).

In reviewing the sufficiency of the evidence, we must "consider both direct and circumstantial evidence, as well as the reasonable inferences to be drawn

from that evidence." *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993) (citing *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990)). Furthermore, it is not our duty to weigh conflicting evidence nor to consider the credibility of witnesses. *United States v. Youngpeter*, 986 F.2d 349, 352-53 (10th Cir. 1993). In this respect, we must defer to the jury's resolution. *Id*. Finally, "[r]ather than examining the evidence in 'bits and pieces,' we evaluate the sufficiency of the evidence by 'consider[ing] the collective inferences to be drawn from the evidence as a whole.'" *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997) (alteration in original) (quoting *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986)).

> Put succinctly,
>
> [e]vidence is sufficient to support a criminal conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government.

*United States v. Mains*, 33 F.3d 1222, 1227 (10th Cir. 1994).

We will first consider Mr. Brooks' argument that there was insufficient evidence to support a conviction for possession of a firearm in furtherance of a drug trafficking crime. Mr. Brooks contests (1) that the prosecution used inaccurate language in this count (number six) of his indictment and (2) that there was insufficient evidence to support a finding that he possessed a gun "in furtherance" of a drug trafficking crime. As to the inaccuracy of the language,

the confusion stems from § 924(c)(1)(A) which defines two separate firearm offenses – "use or carry during or in relation to" and "possesses in furtherance" – while Count Six of the indictment only referred to "the defendant, *during and in relation to* the attempted manufacture of methamphetamine, a drug trafficking crime for which he may be prosecuted in a court of the United States, unlawfully *possessed in furtherance* of such crime, a firearm . . . ." (Emphasis added). Aplt. Br. at 10. Since the prosecution failed to include the "use and carry" language which should accompany "during and in relation to," the court submitted jury instructions which omitted the words "during and in relation to" and in fact only defined the offense of "possessing the firearm in furtherance." Aple. Supp. App. Vol. IV at 609-10. Mr. Brooks suggests that the prosecution was obligated to prove that the gun was possessed both "during and in relation to" and "in furtherance of" the attempted manufacture of methamphetamine. This is not so.

While the trial court is precluded from amending an indictment so as to add an offense or otherwise broaden the possible bases for conviction, *Stirone v. United States*, 361 U.S. 212, 216-17 (1960), it may strike from an indictment allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests. *United States v. Miller*, 471 U.S. 130, 136-37 (1985). Indeed, Federal Rule of Criminal Procedure 7(d) empowers district courts to "strike surplusage from the indictment or information" upon defendant's

motion. Acting in its discretion, a district court may strike as surplusage allegations not relevant to the charge at issue. *See generally Bary v. United States*, 292 F.2d 53, 55-56 (10th Cir. 1961). In Count Six, the court's striking of the surplusage language from the jury instruction cured any defect without adding any new offense.

Mr. Brooks also contends that there was insufficient evidence for the jury to find that the .357 magnum Ruger revolver found in his RV, underneath the pillow on his bed, was used in furtherance of his attempted manufacture of methamphetamine. The district court relied upon *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999), in noting that the government was required to prove beyond a reasonable doubt that Mr. Brooks possessed the firearm and that he committed the underlying offense that the firearm furthered.

As to the attempted manufacture of methamphetamine (the underlying offense), there is sufficient evidence to convict Mr. Brooks. We note that the liquid found in Mr. Brooks' RV was the "next-to-the-end step" in pseudoephedrine to methamphetamine conversion, indicating an active stage of manufacture. Aple. Supp. App. Vol. II at 314-15. Various other items taken from the RV, including the funnels and containers, are consistent with such a process. The district court also referred to Mr. Brooks' having been discovered on a previous occasion with methamphetamine and precursor material in the same RV

in Missouri.

As to the possession of the gun, although Mr. Brooks was not present at the RV at the time of the search, the prosecution established constructive possession of the weapon. "A person has constructive possession when he or she knowingly holds ownership, dominion, or control over the object and the premises where it is found. The government may prove constructive possession by circumstantial evidence." *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994) (citation omitted). While the jury was instructed that mere presence of the firearm was not sufficient, it was also instructed as to factors it could consider in determining whether the possession of the firearm "furthers, advances, or helps forward" the drug trafficking offense. Aple. Supp. App. Vol. IV at 609-10. *See also United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001); *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). Here, the loaded revolver was found within ten feet of the recovered evidence of an active methamphetamine laboratory. The court concluded that Mr. Brooks was concerned with protecting his operation (indicated by the video surveillance system installed in his RV) and that the loaded firearm might have assisted in his security effort. *See United States v. Lott*, 310 F.3d 1231, 1246-48 (10th Cir. 2002) (finding that the placement of a loaded, semi-automatic weapon in the driver's seat of the car where instrumentalities of methamphetamine

manufacturing were also found was sufficient evidence from which a jury could conclude that the purpose of the gun was to provide defense in furtherance of attempting to manufacture methamphetamine).

Mr. Brooks also claims that there was insufficient evidence to support his convictions for manufacture or attempted manufacture of methamphetamine and that his motion for judgment of acquittal should have been granted. As stated previously, we evaluate the sufficiency of the evidence by testing whether "*any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.*" *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The evidence is viewed in the light most favorable to the guilty verdict, accepting all reasonable inferences that may be drawn from the evidence. *Id.*

In defense of his argument, Mr. Brooks points out that not all of the precursor materials to methamphetamine were found on his property, that no identifiable heat source for methamphetamine production was located in his RV, and that other individuals (including Mr. Penner) had access to the various property on the farm, including the "red barn" and a white trailer.

The record with which we have been presented does not dispute these allegations. Nevertheless, these facts do not detract significantly from the evidence supporting manufacture of methamphetamine. At the trial court level, in order to sustain its burden for attempted manufacture of methamphetamine, the

-10-

prosecution had to prove beyond a reasonable doubt that (1) the defendant intended to manufacture methamphetamine, and (2) the defendant committed an act which constituted a substantial step towards commission of the substantive offense. *United States v. Sullivan*, 919 F.2d 1403, 1429 (10th Cir. 1990). We must affirm the judgment of conviction if there is record evidence which would allow a rational trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt. *Jackson*, 443 U.S. at 324.

The government presented evidence that Mr. Brooks purchased precursor materials (pseudoephedrine) on at least nine separate occasions from Target. The police found various items consistent with methamphetamine production (hydrogen peroxide, matches, reddish stained coffee filters, empty bottles of Heetco) in Mr. Brooks' pickup truck. Methamphetamine and residue of other chemicals used in its production was identified from several containers taken from Mr. Brooks' RV. For the purpose of proving intent, plan, or absence of mistake, the government introduced evidence that Mr. Brooks had been arrested by police in Missouri driving the same RV with methamphetamine and precursor materials for its production. *See* Fed. R. Evid. 404(b). A forensic chemist testified that heat is not necessary for methamphetamine manufacture, only that heat may speed up the process. Aple. Supp. App. Vol. II at 288, 320. He also testified as to the theoretical yield of methamphetamine from 912 cold pills,

-11-

ranging between thirteen and thirty-one grams. *Id*. at 418-21.  Because the evidence presented at trial was sufficient to allow the trier of fact to find the defendant guilty of methamphetamine and attempted methamphetamine production, we must affirm the conviction.

The last of Mr. Brooks' sufficiency claims is that there was insufficient evidence to support a conviction for possession of pseudoephedrine with reasonable cause to believe it would have been used to manufacture methamphetamine, under 21 U.S.C. § 841(d).  He also claims that the trial court erred in denying his motion for judgment of acquittal as to these counts.

To sustain a conviction under 21 U.S.C. § 841(d), the government must prove that the defendant:  (1) knowingly or intentionally possessed or distributed a listed chemical, and (2) possesses or distributes a listed chemical, knowing or having reasonable cause to believe that the listed chemical would be used to manufacture a controlled substance.  Mr. Brooks does not challenge the fact that he knowingly or intentionally possessed the pseudoephedrine.  (He purchased Target-brand pseudoephedrine pills on nine different occasions.)  The remaining question is whether the evidence (taken in a light most favorable to the prosecution) was sufficient for a jury to find beyond a reasonable doubt that Mr. Brooks knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine.  Direct evidence of methamphetamine

production in Mr. Brooks' RV was presented to the jury (e.g., presence of methamphetamine and precursor chemicals in various bottles and funnels). In addition, although Mr. Brooks purchased 912 pseudoephedrine pills in a forty-eight-day period, which would require an individual's ingestion rate of nineteen pills per day, no unopened or unused pills were found during the searches of Mr. Brooks' property or person. Based on this evidence, it was not unreasonable for the jury to conclude that Mr. Brooks was purchasing the pseudoephedrine pills to use them for methamphetamine manufacture.

Mr. Brooks next contends that evidence derived from the search warrant and from his arrest should have been suppressed. Prior to trial, Mr. Brooks raised a suppression issue only concerning evidence found during his warrantless arrest. The district court held a hearing on this motion and denied it. At no time did Mr. Brooks attempt to suppress evidence derived from the search warrant. Arguing before the district court at the suppression hearing, Mr. Brooks' attorney clarified that "[w]e are challenging the search incident to arrest that occurred in Douglas County. We're not challenging the search that occurred in Franklin County." Aple. Supp. App. Vol. IV at 652.

Federal Rule of Criminal Procedure 12(e) presumes that motions to suppress evidence under Rule 12(b)(3) that are not raised prior to trial have been waived. Federal Rule of Criminal Procedure 12(e) states that "[a] party waives

-13-

any 12(b)(3) defense, objection, or request not raised by the deadline the court

sets under Rule 12(c) . . . . For good cause, the court may grant relief from the

waiver."

When a motion to suppress evidence is raised for the first time on appeal,

we must decline review. *See United States v. Dirden*, 38 F.3d 1131, 1139 n.10

(10th Cir. 1994) ("Federal Rule of Criminal Procedure 12(b)(3) requires that a

motion to suppress be made prior to trial, and Rule 12[(e)] provides that failure to

do so constitutes a waiver. By failing to challenge anything but the stop in the

proceedings below, Dirden has waived any other challenges on appeal."); *United

States v. Hart*, 729 F.2d 662, 665 (10th Cir. 1984) (explaining that motions to

suppress evidence must be made prior to trial); *United States v. Bridwell*, 583

F.2d 1135, 1139-40 (10th Cir. 1978) ("The motion to suppress was waived by

untimely filing and may not now be asserted on appeal.").[4]

There are a number of policy reasons for requiring defendants to move to

suppress evidence prior to trial. As articulated by the Fifth Circuit in *United

States v. Chavez-Valencia*, 116 F.3d 127, 131 (5th Cir. 1997), because

---

[4]In several cases, we have engaged in plain-error review even after a
defendant has failed to make a motion to suppress evidence prior to trial. *See
e.g.*, *United States v. Meraz-Peru*, 24 F.3d 1197, 1198 (10th Cir. 1994); *United
States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991). However, in no case have
we found plain error where the suppression claim was waived prior to trial and
raised for the first time on appeal.

-14-

"suppression of evidence is not devised so much [as] a personal right of the defendant, but, instead as an incentive to protect the public against an over-aggressive police force," the exclusionary rule should be used sparingly in instances where its deterrent effect on police violations is minimal (as with appellate review for plain error). In addition, if a defendant is able to challenge the inclusion of evidence upon appeal, the government will face the difficult task of defending itself based on a potentially meager record. *Id*. at 132. Moreover, although the government can appeal an adverse ruling on a suppression motion prior to trial, it cannot do so once jeopardy has attached, as would be the case on appeal. *Id*. We therefore will not review Mr. Brooks' claim that the evidence from the search of his home should have been suppressed, as he failed to make this claim prior to trial.

As to the decision denying the suppression of evidence derived from the warrantless arrest, this issue was properly raised before the trial court. Therefore, we examine the district court's factual findings under the clearly erroneous standard and in the light most favorable to those findings. *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992). The ultimate question regarding the reasonableness of a search is a question of law, which is subject to de novo review. *United States v. Parra*, 2 F.3d 1058, 1063 (10th Cir. 1993).

Mr. Brooks argues that his warrantless arrest was unconstitutional. While

police were still actively searching Mr. Brooks' home pursuant to the Franklin County search warrant, they put out an "attempt to locate" call to find Mr. Brooks. Later that evening, police officers identified him driving and conducted a felony stop. Mr. Brooks' 1963 Chevy Impala was impounded and searched. Mr. Brooks' principal argument is that there was insufficient probable cause to arrest him (because the search warrant had not been completed) when the "attempt to locate" him was issued. Even without the evidence of methamphetamine production, which the police uncovered during the search of his home, officers had extensive first-hand knowledge of Mr. Brooks' suspicious activities. Drug Enforcement Unit officers had observed Mr. Brooks purchase pseudoephedrine pills and watched additional occasions on videotaped footage provided by Target. The officers had also run a criminal history check on Mr. Brooks, finding that he had been arrested on a previous occasion for possession and distribution of methamphetamine from the same RV. Based on this information alone, the officers had sufficient cause to arrest.

> An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested.

*United States v. Dozal*, 173 F.3d 787, 792 (10th Cir. 1999) (internal quotation omitted). In the context of warrantless arrests, the Fourth Amendment requires

only that the arresting officers have probable cause to believe that the person to be arrested has committed a crime. *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

In addition to having probable cause to arrest Mr. Brooks, the officers were justified in searching Mr. Brooks' Impala under three alternate bases. First, the Impala was included in the Franklin County search warrant. Second, because the officers had probable cause to arrest Mr. Brooks, his car could have been searched incident to his lawful arrest. Third, because officers had probable cause to believe that the Impala contained contraband, a warrantless search of the car would have been permissible under the automobile exception to the warrant requirement. *See California v. Carney*, 471 U.S. 386, 392 (1985); *United States v. Chatman*, 994 F.2d 1510, 1514 (10th Cir. 1993). Accordingly, the evidence derived from the arrest of Mr. Brooks was properly admitted by the trial court.

Mr. Brooks argues that the district court erred when it sentenced him under Criminal History Category IV rather than III. Because Mr. Brooks did not object to the district court's calculation of his criminal history score until now, we review for plain error. *United States v. Tisdale*, 248 F.3d 964, 975 (10th Cir. 2001) (citing *United States v. Ciapponi*, 77 F.3d 1247, 1252 (10th Cir. 1996)).

To establish plain error, one "must show: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial

rights." *United States v. Fabiano*, 169 F.3d 1299, 1303 (10th Cir. 1999) (internal quotations omitted).  If these three requirements are satisfied, "then we may exercise discretion to correct the error if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

The parties agree that Mr. Brooks received seven criminal history points for prior offenses, of which only six points were used to calculate his criminal history category.  In the Presentence Investigation Report, an additional two points were added according to U.S.S.G. § 4A1.1(d), which adds two points for committing an offense while on probation.  However, as both parties point out, Mr. Brooks was not on probation for a crime in Osage County, Kansas, as was stated in the Presentence Investigation Report.  Rather, Mr. Brooks was on probation for a crime he committed in St. Charles County, Missouri.  Thus, although the two points were added based on the wrong crime, the total calculation is not in error. The St. Charles County probation satisfies the statutory requirement.  We determine that the misattribution of these two points did not affect Mr. Brooks' substantial rights and does not constitute plain error.

Mr. Brooks claims that his counsel was ineffective in failing to file a motion to suppress evidence obtained from the search warrant and in not objecting to the government's evidence of prior bad acts under Fed. R. Evid.

404(b). We review the question of whether a defendant has received effective assistance of counsel under a highly deferential standard. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The vast majority of ineffective assistance of counsel claims should be brought in collateral proceedings rather than on direct appeal from a conviction. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Ineffective assistance claims "brought on direct appeal are presumptively dismissible." *Id*. (citing *Beaulieu v. United States*, 930 F.2d 805, 808 (10th Cir. 1991)). The purpose of this rule is to ensure that we are provided with a developed factual record of the events. *Id*. "An opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand." *Id*.

The primary exception for allowing appellate review of a claim of ineffective assistance of counsel on direct appeal is when there exists a sufficiently developed record. *Beaulieu*, 930 F.2d at 807. Typically, even if the record appears sufficient, "the claim should still be presented first to the district court in collateral proceedings (which can be instituted without delay) so the reviewing court can have the benefit of the district court's views." *Galloway*, 56 F.3d at 1240. The issues which Mr. Brooks raises here have never been raised

before the trial court. Appellate counsel has failed to make any showing that there is a sufficiently developed factual record, nor has the trial court been afforded an opportunity to evaluate the trial counsel's performance. We therefore dismiss this claim.

Mr. Brooks argues that the district court erred when it included both Counts Four (attempted manufacture of methamphetamine) and Five (manufacture of methamphetamine) in its judgment of conviction. At the close of the government's evidence, Mr. Brooks had asserted that the counts were alternative theory charges based upon the same evidence. The government conceded. In its post-trial Memorandum & Order, the district court found that the two counts merged for the purpose of sentencing. We note that, while this issue was initially raised by Mr. Brooks, he did not object to the imposition of a sentence on both charges at the time of his sentencing. Thus, we must review this matter for plain error.

The imposition of an illegal sentence constitutes plain error. *United States v. Vance*, 868 F.2d 1167, 1169 (10th Cir. 1989). The district court found that the two counts should have been merged for purposes of sentencing because the charges were based on the same facts. The court noted that the crime of attempt is a lesser included offense of the substantive crime, and proof of manufacturing methamphetamine is sufficient to prove the lesser included offense of attempted

manufacture. Aplt. Appx. at 27 (citing *United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985)). It appears that the parties and the court failed to ensure that Count Four (attempted manufacture) was not included in the judgment. Accordingly, Mr. Brooks' conviction as to Count Four (attempted manufacture) as well as the concurrent sentence should be vacated. *See Rutledge v. United States*, 517 U.S. 292, 307 (1996).

Last, we consider whether the trial court violated Mr. Brooks' Sixth Amendment rights and erred in calculating his sentence by using a drug quantity not determined by the jury. Because this issue was not raised before the district court, we review for plain error. Fed. R. Crim. P. 52(b).

Mr. Brooks claims that his sentence violated both *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because "[t]he jury was not given an instruction regarding the drug quantity, other than to make a determination regarding whether [Mr.] Brooks was found to have manufactured or to have attempted to manufacture more than 5 grams of methamphetamine." Aplt. Br. at 28. Although Mr. Brooks has not sought supplemental briefing to address *United States v. Booker*, 125 S. Ct. 738 (2005), raising his Sixth Amendment issue pursuant to *Blakely* in his opening brief is sufficient to invoke *Booker*. *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 816 (10th Cir. 2005); *see also Booker*, 125 S. Ct. at 769 (stating that "both [its]

Sixth Amendment holding and [its] remedial interpretation of the Sentencing Act" must be applied to all cases on direct review).

In *Booker*, the Supreme Court stated that sentencing courts may commit two types of error when applying the then-mandatory Guidelines–constitutional and non-constitutional error. 125 S. Ct. at 769. Constitutional *Booker* error occurs when a court "re[lies] upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily," in violation of the Sixth Amendment. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). A court commits non-constitutional *Booker* error when it "appl[ies] the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." *Id*. at 731-32.

Here, the district court, in adopting the presentence report, found that Mr. Brooks possessed 48.96 grams of pseudoephedrine and used this quantity to derive, from the Guidelines, his base offense level of 28. *See* U.S.S.G. § 2D1.1. However, as Mr. Brooks claims, in no sense did the jury find him responsible for possessing 48.96 grams of pseudoephedrine. Rather, the jury found Mr. Brooks guilty in Counts Seven – Fifteen of "possessing pseudoephedrine knowing, or having reasonable cause to believe, that it would be used to manufacture

-22-

methamphetamine," but the jury made no quantity findings for these counts. Rec., Vol. IV at 646-47.[5] Consequently, the district court committed constitutional *Booker* error when it enhanced Mr. Brooks' sentence based on its judge-made finding of drug quantity.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F. 3d at 736 (quotation omitted). The first two prongs have been met as it was error for the judge to make the drug quantity finding and the advent of *Booker* made this error plainly apparent at the time of appeal. *Gonzalez-Huerta*, 403 F.3d at 732.

Although our review is more exacting because constitutional *Booker* error is involved, Mr. Brooks cannot satisfy the third prong to demonstrate plain error. Mr. Brooks did not challenge the presentence report's factual conclusion that he purchased 48.96 grams of pseudophedrine from Target. He is unable, nor does he attempt, to demonstrate "a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence . . . ." *United States v. Dazey*, 403 F.3d 1147,

---

[5] The charges in Counts Seven – Fifteen were in violation of 21 U.S.C § 841(c)(2). The jury did make a finding as to quantities of "five grams or more" of methamphetamine, in Counts Four and Five, in violation of 21 U.S.C. § 841(a)(1).

1175 (10th Cir. 2005). Similarly, he makes no attempt to show "a reasonable probability that, under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range." *Id.* (footnote omitted).

Even if Mr. Brooks could demonstrate that the sentence affected his substantial rights, this error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

> This court has identified a number of non-exclusive factors which may show that a defendant has satisfied the fourth element of the plain error analysis: (1) a sentence increased substantially based on Booker error; (2) a showing that the district court would likely impose a significantly lighter sentence on remand; (3) a substantial lack of evidence to support the entire sentence the Guidelines required the court to impose; (4) a showing that objective consideration of the 18 U.S.C. § 3553(a) factors warrants a departure from the suggested guidelines sentence, and (5) other evidence peculiar to the defendant which demonstrates a complete breakdown in the sentencing process.

*United States v. Westover*, __ F.3d __, No. 03-3287, 2006 WL 218179, at *2 (10th Cir. Jan. 30, 2006) (citing *United States v. Dowlin*, 408 F.3d 647, 671 (10th Cir. 2005)). There is nothing in the record that indicates potential for a significant reduction in the sentence, and Mr. Brooks cannot satisfy any of the remaining factors. Indeed, there is ample evidence from the trial record which supports the 48.96 grams of pseudoephedrine found by the district court at sentencing. *See* Aplt. App. at 30 (trial testimony regarding the "17 boxes of 48 count 60-milligram

pills of pseudoephedrine Mr. Brooks purchased from Target").  Our review of the evidence, considered in light of the sentencing factors identified in 18 U.S.C. § 3553(a), does not suggest a sentence lower than that imposed by the district court. *See United States v. Magallanez*, 408 F.3d 672, 686 (10th Cir. 2005) ("The district court did not make any comment that could be construed as expressing dissatisfaction with [defendant's] sentence, nor were there any facts in the record to suggest a reasonable probability that the district court would have exercised its discretion to depart from the Guidelines.").  Further, we find nothing in the record before us that would suggest a complete breakdown in the sentencing process.

We **AFFIRM** the conviction in part and **REVERSE** in part, **REMANDING** with direction to vacate Count Four in accordance with this opinion.