**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DENNIS EMERSON GONZALEZ,

      Defendant-Appellant.

No. 05-6374
(D.C. No. 04-CR-179-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY, HOLLOWAY,** and **GORSUCH**, Circuit Judges.

---

Dennis Emerson Gonzalez asks this court to reverse his conviction because his defense attorney conceded Mr. Gonzalez's guilt during closing argument and allegedly declined to include him in a chambers conference with the district court judge, conduct he contends violated his Sixth Amendment right to effective assistance of counsel, as well as his rights under Fed. R. Crim. P. 43 and the Due Process Clause of the Fifth Amendment. Mr. Gonzalez further asks us to reverse his sentence on a single count where the term of sentence imposed by the district court indisputably was in violation of law. Because Mr. Gonzalez's challenges to

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his conviction implicate factual questions for which we have no record at this time, and consonant with our existing jurisprudence, we defer them to collateral proceedings. We do, however, remand for re-sentencing on the sole count of which Mr. Gonzalez complains.

* * *

After his arrest in the summer of 2003, Jason "Joker" Lujan cooperated with an Oklahoma City Police Department narcotics investigation. Mr. Lujan told the police that, beginning in early 2002, several members of a Hispanic gang from California, later identified as the Compton Varrio Tortilla Flats, moved to Oklahoma City to set up a methamphetamine-dealing operation. Mr. Lujan explained to the police that the members of the group included "Boxer," one of his confederates later identified as Mr. Gonzalez, who ran the operation from Florida; "Lalo," later identified as Eduardo Verduzco, who delivered the drugs to Oklahoma City at Mr. Gonzalez's direction; and Jennifer Lujan, his sister-in-law, who distributed the methamphetamine in Oklahoma City with the assistance of Mr. Gonzalez's girlfriend "Mousey," later identified as Maria Ginez. With Mr. Lujan's assistance, the police eventually seized over 2,800 grams of methamphetamine from participants in the drug ring and obtained indictments against twelve participants, including Mr. Gonzalez. Most of the defendants pled guilty and cooperated with the government. Along with two associates, Mr.

Gonzalez – accused of being the group's ringleader – pled not guilty and proceeded to trial.

In his opening statement before the jury, counsel for Mr. Gonzalez, Charles Kilgore, denied Mr. Gonzalez's involvement in "any kind of drug conspiracy." Tr. of Opening Stmt. at 27. The government, however, proceeded to present substantial evidence of Mr. Gonzalez's guilt from more than a dozen cooperating witnesses, as well as 16 law enforcement officers, agents, and employees. The evidence at trial adduced that Mr. Gonzalez left Oklahoma for Florida in February 2003, after one of the members of the drug organization was arrested. According to testimony presented, Mr. Gonzalez continued to direct from Florida the California-to-Oklahoma drug operation, and, after his move, proceeds of various drug transactions were wired to Florida.

Responding to the proof presented by the government, Mr. Kilgore took a different tack in closing, admitting Mr. Gonzalez's involvement in the drug conspiracy but seeking to diminish it by suggesting that he participated only until February 2003, when he moved to Florida, and that Mr. Verduzco was the true ringleader. Thus, for example, Mr. Kilgore told the jury that "I'm not going to ask you to find [Mr. Gonzalez] not guilty on all of those counts, because if I did, I think you'd probably tune me out from the very beginning and just go somewhere else." Tr. of Closing Arg. (vol. 4) at 30-31. Likewise, Mr. Kilgore stated that Mr. Gonzalez's "involvement stopped in February of 2003," *id.* at 34, and that Mr.

Gonzales was "a lieutenant . . . working for Lalo," *id.* at 35. And when discussing

the particular counts charged, Mr. Kilgore submitted, for example, that "now,

Count 1 is the conspiracy. . . . We'll submit. . . . Dennis [Gonzalez] was

involved. . . . He wasn't the head, but he was involved. But I will argue that he

was only involved . . . until he took off to Florida." *Id.* at 67.

After Mr. Kilgore's closing argument, the district court asked Mr. Kilgore if

it should issue a conspiracy-withdrawal instruction to the jury. *Id.* at 75; *see*

Docket Entry No. 382 (instruction titled "AFFIRMATIVE DEFENSE OF

WITHDRAWAL FROM A CONSPIRACY").[1] The government agreed with the

district court that such an instruction was appropriate. After reviewing the

proposed instruction overnight, however, Mr. Kilgore declined the instruction, and

---

[1] This proposed instruction stated, in pertinent part:

Defendant Dennis Emerson Gonzalez asserts as a defense to
each of the charges of conspiracy in Counts 1 and 29 . . . that he
withdrew from the conspiracy in February of 2003.

In this regard, you are instructed that withdrawal from the
conspiracy is a defense to the acts and substantive counts . . .
committed by one or more coconspirators after a defendant's
withdrawal for which that defendant would otherwise be liable or
vicariously liable under these instructions. . . .

If you find that Defendant Gonzalez has proved his affirmative
defense of withdrawal from the conspiracy charged in Count 1 and/or
in Count 29, then you must find Defendant Gonzalez not guilty of
any acts or offenses committed by other members of that conspiracy
after Defendant Gonzalez withdrew from the conspiracy unless he
aided, abetted or caused such acts.

-4-

the government did not request it. Tr. of Closing Arg. (vol. 4) at 106. The district court then generally instructed the jury, including an instruction indicating the vicarious liability of co-conspirators for the actions of others in the drug ring. *See* Docket Entry No. 382 (instruction titled "VICARIOUS LIABILITY OF CO-CONSPIRATORS").[2] Though there is no mention of it in the record before us, the parties' briefs represent that the district court also sought and held additional meetings in chambers to discuss questions submitted by the jury. Apparently, either during or shortly after one of these conferences, the district court made some type of inquiry to Mr. Kilgore regarding whether his client had agreed to his change in tactics and concession of guilt. No transcript of the meeting seems to exist but the government represents that Mr. Kilgore said he altered his trial tactics with Mr. Gonzalez's permission. Mr. Gonzalez stresses that there is no

---

[2] This instruction stated:

> Every conspirator is guilty of the illegal acts that are done as part of and in furtherance of the conspiracy even though those acts are done solely by co-conspirators. If you are satisfied beyond a reasonable doubt that, at the time an alleged offense was committed, a Defendant had entered into and continued to be a member of an unlawful conspiracy as charged in Count 1 and as I have defined that for you and if you further find beyond a reasonable doubt that the alleged acts charged in any of Counts 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 19, 21, 22, 26, 27, 29 and 30 through 79 were committed while the conspiracy continued to exist and in furtherance of that unlawful conspiracy or as an object of that conspiracy, then you may find that Defendant guilty of the offense or offenses charged in such count or counts even though he was not the person who actually committed or personally aided and abetted in the commission of that offense or those offenses.

-5-

indication in the record to confirm the accuracy of this representation and denies that he was ever informed of the pertinent chambers meeting or that he waived his right to be present during this proceeding.

Ultimately, the jury found Mr. Gonzalez guilty of 63 of the 65 counts with which he was charged and, by means of a special verdict form, indicated that Mr. Gonzalez's conspiracy involved more than 500 grams of methamphetamine. *See* Docket Entry No. 385.

At sentencing, the district court began its analysis with the advisory Guidelines' suggested sentencing range of ten years to life in prison and then proceeded to review the various factors set forth in 18 U.S.C. § 3553(a); the ultimate upshot: Mr. Gonzalez was sentenced to 30 years on each of 12 separate counts; 5 years each on 2 separate counts; 20 years each on 48 separate counts; and 30 years on a single remaining count at issue in this appeal. The district court indicated that its sentences would run concurrently, for a total of 30 years' imprisonment.

* * *

Mr. Gonzalez, represented by new counsel on appeal, challenges his conviction on the ground that the assistance he received from Mr. Kilgore was so deficient that it violated his Sixth Amendment right to counsel. Specifically, he alleges that Mr. Kilgore's concession of guilt during closing argument; putative failure to inform Mr. Gonzalez of the chambers meeting or his right to be present;

-6-

and failure to accept a conspiracy-withdrawal instruction all fell below the requisite standard of care. In order to prevail on an ineffective assistance of counsel claim, Mr. Gonzalez must demonstrate that his "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694; *see also United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006) (applying *Strickland*). The threshold question we must address, however, is whether Mr. Gonzalez's claim is best assessed on direct appeal or on collateral review pursuant to 28 U.S.C. § 2255.

We view this initial question, moreover, through the prism of our decision in *United States v. Galloway*, 56 F.3d 1239 (10th Cir. 1995) (*en banc*). There, we held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *Id.* at 1240. The rationale for our rule arises from the fact that a collateral proceeding affords the parties the opportunity to develop a factual record through evidentiary hearings; gives the allegedly ineffective attorney the opportunity to explain his reasons and actions; and allows the district court, far better equipped than we for all this evidence taking, to take a first crack at deciding the merits. At the same time, however, in *Galloway* we anticipated that there may indeed be "rare instances"

which permit direct review of ineffective assistance of trial counsel claims. *Id.* But even so, we cautioned that *"there is only a slight chance that we will forego the development of a factual record or at least an opinion by the district court on the subject in the first instance . . . [as] such a rule is inconsistent with the overriding principle that virtually all claims – even those which might conceivably be brought on direct appeal – should be brought in collateral proceedings." *Id.* at 1241.

Applying these considerations to this case, we conclude that Mr. Gonzalez has failed to rebut the exceedingly strong presumption against the immediate consideration of his ineffective assistance claim. The critical transactions surrounding Mr. Gonzalez's claim arise from a chambers meeting for which we do not have a transcript and thus cannot know, among other things: Was Mr. Gonzalez informed of the meeting? Did he waive his right to attend? Did he consent to Mr. Kilgore's concession of guilt? What were the reasons for Mr. Kilgore's rejection of a withdrawal instruction? We may surmise and speculate, but we have no firm facts at hand to answer any of these, and other, unavoidable and potentially dispositive questions. By contrast, a district court in collateral proceedings is well equipped to take evidence from all relevant witnesses, assess the credibility of each, and make factual findings on all these scores. Without development of such a factual record, we simply cannot sensibly evaluate Mr. Gonzalez's claim.

Mr. Gonzalez responds that an admission by counsel of his or her client's guilt to the jury represents the paradigmatic example of incompetent counseling and requires no further factual findings, citing to our decision in *United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995). But to state a claim for ineffective assistance of counsel under the Sixth Amendment, a claimant must show, first, that counsel's conduct was deficient – overcoming the twin presumptions that the attorney was acting within the "wide range" of reasonable professional assistance and that his or her challenged conduct might be considered sound trial strategy, *Strickland*, 466 U.S. at 689 – and, second, the claimant must also show that he suffered prejudice from counsel's deficient conduct. In *Williamson*, we merely held that the latter of these two tests, concerning prejudice, is presumptively (though not still definitively[3]) satisfied when counsel confesses a client's guilt before the jury. 53 F.3d at 1511. And, as we have already explained, the first test – whether counsel's conduct was deficient – can only be fairly settled after the collection and assessment of a great many facts not in the record before us. Indeed, *Williamson* itself took up the Sixth Amendment question on direct

---

[3] We held that in order to determine whether such a prejudicial admission actually occurred, the focus must still remain on the factual question "whether, in light of the entire record, the attorney remained a legal advocate of the defendant who acted with undivided allegiance and faithful, devoted service to the defendant." *Williamson*, 53 F.3d at 1511 (internal quotation marks omitted). Thus, counsel's admission that his client was a drug user who bought from and associated with known drug dealers, where he also argued that there was no evidence that she was a coconspirator, did not constitute an admission of guilt leading to the presumption of prejudice. *Id.*

appeal (deciding it adversely to the defendant) only because, quite unlike here, consideration of the claim in that case could be fairly made by reference to matters contained in the existing trial record. 53 F.3d at 1510 n.3.[4]

In a supplemental opening brief to this court, Mr. Gonzalez argues that, whatever the disposition of his Sixth Amendment ineffective assistance claim, he was also denied the opportunity afforded him by Rule 43 of the Federal Rules of Criminal Procedure and the Due Process Clause of the Fifth Amendment to be present in the chambers conference. But Rule 43 expressly indicates that the accused need not be present at "proceeding[s] involv[ing] only a conference or hearing on a question of law," Fed. R. Crim. P. 43(b)(3), and Mr. Gonzalez does not argue that due process extends to such conferences or hearings, s*ee United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("[A] defendant has a due process right to be present at a proceeding whenever his presence has a relation,

_____

[4] Our only misgiving about the course we take today is the practical matter that Mr. Gonzalez is very ably represented by the public defender in this appeal by dint of his right to counsel under the Sixth Amendment, and he is not guaranteed such representation during a Section 2255 proceeding. *See United States v. Snitz*, 342 F.3d 1154, 1158 (10th Cir. 2003) ("[T]he right to counsel extends to appeal but not collateral review."). But this worry does not lack for a solution as the district court can afford Mr. Gonzalez counsel on collateral review in appropriate circumstances. In fact, should the district court determine that an evidentiary hearing is warranted, federal rules provide that "the judge *must* appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Neither does anything prohibit the district court from appointing counsel at an even earlier stage. *Id.* ("These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.").

reasonably substantial . . . to defend against the charge. The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." (internal quotation and alterations omitted)); *accord United States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1992). Likewise, the rights afforded by Rule 43 and due process can be waived with the consent of the accused. *See Gagnon*, 470 U.S. at 528-29; *United States v. Edmonson*, 962 F.2d 1535, 1543 (10th Cir. 1992) (citing *Diaz v. United States*, 223 U.S. 442, 445 (1912)); *Larson v. Tansy*, 911 F.2d 392, 396-97 (10th Cir. 1990). The parties before us disagree sharply over whether the chambers conference at issue concerned only questions of law as opposed to fact, as well as when and in what capacity the district court's inquiry to Mr. Kilgore arose. It is further unknown whether Mr. Gonzalez did or did not waive his right to attend. Accordingly, like Mr. Gonzalez's ineffective assistance of counsel claim, we conclude his argument regarding a possible violation of Rule 43 and due process is better resolved in a Section 2255 proceeding where evidence on these critical and contested factual questions can be taken.

* * *

Finally, Mr. Gonzalez challenges a single aspect of his sentence, arguing that the district court erred by imposing a 30-year sentence on Count 29, involving a violation of 18 U.S.C. § 1956(h), conspiracy to commit money laundering. The government concedes the error and the parties agree that the maximum sentence

-11-

available for this offense is 20 years. *See* 18 U.S.C. § 1956(a)(2). The parties also agree that, despite this error, Mr. Gonzalez was lawfully sentenced to 30 years on no fewer than twelve other counts,[5] all of which were to run concurrently with the sentence for Count 29, and thus Mr. Gonzalez will be obliged to serve that full term of incarceration regardless of the outcome of this sentencing appeal.

While Mr. Gonzalez did not object to the imposition of the sentence before the district court and we therefore must review under the plain error standard, *see United States v. Lott*, 310 F.3d 1231, 1239-40 (10th Cir. 2002), we have (albeit in circumstances involving more obvious prejudice than here, where Mr. Gonzalez will be serving a 30 year prison term anyway) previously held that the imposition of an illegal sentence generally constitutes plain error. *United States v. Brooks*, 438 F.3d 1231, 1242 (10th Cir. 2006) (citing *United States v. Vance*, 868 F.2d 1167, 1169 (10th Cir. 1989), *abrogated in part on other grounds by Hughey v.*

_____

[5] The other counts and charges are as follows: Count 1, conspiracy to possess with intent to distribute and distribute 500 grams or more of methamphetamine, 21 U.S.C. § 846; Count 5, possession with intent to distribute 50 grams or more of a substance containing methamphetamine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Counts 6, 7, 11, and 15, distribution of 50 grams or more of a substance containing methamphetamine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Counts 10 and 14, possession with intent to distribute 500 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1); Counts 19 and 27, possession with intent to distribute 500 grams or more of methamphetamine and aiding and abetting, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and Counts 21 and 26, distribution of 500 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1).

*United States*, 495 U.S. 411 (1990)).[6] It is on this basis that we reverse the sentence on Count 29 and remand for the district court to impose a new sentence on that count no longer than the statutory maximum of 20 years.[7]

* * *

Mr. Gonzalez's conviction is affirmed and his sentence with respect to Count 29 alone is vacated and the matter is remanded for re-sentencing consistent with this order and judgment.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

---

[6] An "illegal sentence" is one "where the term of incarceration exceeds the statutory maximum." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 739 n.10 (10th Cir. 2005) (*en banc*).

[7] Because it was not fully developed in this case, we expressly leave open the question whether, consistent with *Brooks* and *Vance*, an illegal sentence imposing no prejudice on defendant – because it is purely concurrent with a lawful sentence and imposes no collateral consequences – may not constitute plain error. *See United States v. Phipps*, 319 F.3d 177, 192 (5th Cir. 2003); *United States v. Meshack*, 225 F.3d 556, 577 (5th Cir. 2000), *as modified*, 244 F.3d 367 (5th Cir. 2001), *cert. denied*, 534 U.S. 861 (2001); *United States v. McCarter*, 406 F.3d 460, 464 (7th Cir. 2005).