# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3823

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Peter Lenell Bourrage, | * | |
| | * | [UNPUBLISHED] |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: January 7, 2010

_____

Before RILEY, SMITH and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Peter Lenell Bourrage was indicted on one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), based on evidence obtained when Bourrage was arrested at a Davenport, Iowa grocery store on August 5, 2007. Bourrage entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the district court's[1] denial

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

of his motion to suppress. The district court sentenced Bourrage to 240 months' imprisonment, and Bourrage now appeals.

Bourrage filed a motion to suppress and, after a hearing, the district court denied the motion. The court then appointed Bourrage a new attorney, who obtained a surveillance video from the grocery store and successfully moved to reopen the suppression hearing. After reviewing the surveillance video and hearing additional testimony, the district court again denied the motion to suppress.

We recount the following facts from the district court's findings. On August 5, 2007, Sergeant Shawn Voigts of the Davenport Police Department was in the parking lot of a Hy-Vee grocery store in Davenport, Iowa. Lisa Ann Warner, a bail bondswoman, approached Sergeant Voigts with papers in her hand and told him that an African-American man in the store named Jason Rickman was wanted on outstanding misdemeanor and felony warrants. Warner briefly described Rickman as an African American male in his thirties, wearing a white t-shirt and with his hair in corn rows, but Sergeant Voigts primarily relied on her to accompany him inside the store to help him locate the suspect. While searching the store with Sergeant Voigts, Warner said either "There he is" or "There they go." Fearing that Rickman would run if he saw her, Warner then left the store. Sergeant Voigts turned and saw two young African-American girls leaving an aisle. He followed the children and found them with an African-American man, who appeared to be in his thirties, wearing a white t-shirt and with his hair in corn rows. The man was Bourrage. However, Sergeant Voigts believed the man was Rickman based on Warner's statement and his own observation that Bourrage generally matched the description Warner provided.

Sergeant Voigts asked Bourrage two or three times to state his name, but Bourrage refused to provide it. Bourrage then abruptly began to walk away. Sergeant Voigts ordered him to stop several times, but Bourrage then ran. Sergeant Voigts subdued Bourrage with his taser gun and arrested him. He then read Bourrage his

*Miranda* warnings. The children fled the store during the encounter, and Warner re-entered. She found Sergeant Voigts standing over Bourrage and told him that Bourrage was not the suspect for whom she was looking. Stunned by this development, Sergeant Voigts asked Bourrage why he ran away if he was not wanted on any warrants. Bourrage replied, "I've got some sh*t on me." Sergeant Voigts had already arrested Bourrage, so he performed a search incident to arrest and found crack cocaine and marijuana in Bourrage's pockets. On the basis of this evidence, Bourrage was indicted for possession with intent to distribute cocaine base.

"We examine the factual findings underlying the district court's denial of the motion to suppress for clear error," *United States v. Williams*, 577 F.3d 878, 880 (8th Cir. 2009) (quoting *United States v. Walsh*, 299 F.3d 729, 730 (8th Cir. 2002)), and "its legal conclusions about probable cause and reasonable suspicion de novo," *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007).

Bourrage argues that the district court clearly erred in finding that Warner was in the store with Sergeant Voigts just before he approached Bourrage because the surveillance footage shows that Warner had already left the store and could not have pointed the sergeant in the direction of Bourrage. Although the surveillance footage does not capture the encounter between Sergeant Voigts and Bourrage, it does show Warner and Sergeant Voigts walking around the store together for approximately three minutes. Shortly thereafter, Warner exits the store. A minute later, two young African-American girls run from the store, after which Warner re-enters. Because this evidence is not inconsistent with the district court's finding that Warner walked around the store with Sergeant Voigts immediately before the sergeant approached Bourrage, we cannot conclude that the district court's finding is clearly erroneous.

Bourrage also argues that the district court's factual findings are clearly erroneous because the testimonies of Sergeant Voigts and Warner were not fully consistent. Although their testimonies were contradictory on certain points, the

district court based each of its factual findings on facially plausible testimony from either Sergeant Voigts or Warner. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City,* 470 U.S. 564, 575 (1985). Because "credibility determinations are not an all-or-nothing proposition," *United States v. Cassidy*, 6 F.3d 554, 557 (8th Cir. 1993), the district court was permitted to credit each witness's testimony in whole or in part. Based on our review of the record, we cannot say that the district court's factual findings are clearly erroneous.

"A *Terry* investigatory stop allows an officer briefly to detain a citizen if the officer has a reasonable suspicion that 'criminal activity may be afoot.'" *United States v. Ortiz-Monroy*, 332 F.3d 525, 528 (8th Cir. 2003) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter . . . is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *United States v. Hensley*, 469 U.S. 221, 229 (1985). "In making reasonable-suspicion determinations, reviewing courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Martinez-Cortes*, 566 F.3d 767, 769 (8th Cir. 2009) (internal quotation marks omitted) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "To satisfy the Fourth Amendment, officers must be able to articulate some minimal, objective justification for a *Terry* stop." *United States v. Griffith*, 533 F.3d 979, 984 (8th Cir. 2008) (citing *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004)). In this case, the district court concluded, on the basis of its factual findings, that Sergeant Voigts had a reasonable suspicion to conduct a brief *Terry* stop when he approached Bourrage in the store. Bourrage challenges this conclusion on two grounds.

First, Bourrage argues that the information Warner provided to Sergeant Voigts was not sufficient to create a reasonable suspicion that there was a man in the grocery store named Rickman who was wanted in connection with a completed felony. Sergeant Voigts testified at the initial suppression hearing that he believed Warner worked for the Department of Corrections because she was wearing a lanyard with an identification badge. In its first order denying Bourrage's motion to suppress, the district court found that Warner was wearing a lanyard with an identification badge based on Sergeant Voigts's testimony, but it reversed this finding after reviewing the surveillance video in which no lanyard is visible. Bourrage argues that because Warner was not wearing a lanyard, Sergeant Voigts could not have formed a reasonable suspicion that Rickman was wanted in connection with a completed felony based on her tip. We reject this argument. "The ultimate test . . . is not what the searching officer actually believed but what a hypothetical officer in exactly the same circumstances reasonably could have believed." *United States v. Roggeman*, 279 F.3d 573, 580 n.5 (8th Cir. 2002). The Fourth Amendment does not require police officers to rely exclusively on information provided by other government officials. *See, e.g., United States v. Jacobsen*, 391 F.3d 904, 906 (8th Cir. 2004). "Reasonable suspicion may be based on an informant's tip as long as it is sufficiently reliable." *United States v. Hill*, 91 F.3d 1064, 1069 (8th Cir. 1996) (quoting *United States v. Quarles*, 955 F.2d 498, 501 (8th Cir. 1992)).

Here, Warner was carrying papers as she approached Sergeant Voigts. She told him that a man inside the grocery store named Rickman was wanted on misdemeanor and felony warrants and she provided a brief description of Rickman. Sergeant Voigts "could assess [Warner's] credibility because the information was provided in person." *See United States v. Carpenter*, 422 F.3d 738, 744 (8th Cir. 2005); *see also United States v. Kent*, 531 F.3d 642, 648-49 (8th Cir. 2008); *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991) (stating that "a face-to-face informant must, as a general matter, be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false").

Moreover, if the tip turned out to be false, Warner could be charged with knowingly providing false information to a police officer. *See* Iowa Code § 718.6(1); *see also Adams v. Williams*, 407 U.S. 143, 146-47 (1972). Nevertheless, Warner not only provided the information in person but accompanied Sergeant Voigts into the store to search for the suspect. After searching the store with Sergeant Voigts, Warner suddenly indicated that the suspect was in the store when she said either "There he is" or "There they go." Under these circumstances, we hold that the district court did not err in concluding that Sergeant Voigts had a reasonable suspicion that Rickman was wanted in connection with a completed felony.

Bourrage also argues that even if Sergeant Voigts had a reasonable suspicion to believe that Rickman was a wanted felon, he did not have a reasonable suspicion that Bourrage was Rickman. Bourrage points out that Rickman is 5'7" tall and weighs approximately 170 pounds, but that Bourrage is 6'6" tall and weighs approximately 310 pounds. He also asserts that Rickman has tattoos under his eyes, but Bourrage does not. The district court did not credit Warner's testimony that she told Sergeant Voigts about these physical differences and showed him a picture of Rickman. Rather, it found that Warner gave a brief description of Rickman but that Sergeant Voigts primarily relied on Warner to visually identify the suspect in the store. The district court also found that Bourrage generally matched the brief description Warner gave Sergeant Voigts; both are African American males in their thirties who were wearing white t-shirts and had similar hairstyles. Again, we cannot say these factual findings are clearly erroneous. Moreover, we conclude that Sergeant Voigts had a reasonable suspicion that Bourrage was Rickman based on Warner's description of Rickman, her statement, "There they go," and the sergeant's visual confirmation that Bourrage generally matched Warner's description of Rickman. Accordingly, Sergeant Voigts conducted an appropriate *Terry* stop when he confronted Bourrage and briefly detained him "to investigate that suspicion," *see Hensley*, 496 U.S. at 229, by asking "a moderate number of questions to determine his identity," *see United States v.*

-6-

*Rodriguez-Arreola*, 270 F.3d 611, 617 (8th Cir. 2001) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)).

Bourrage was not required to answer Sergeant Voigts's questions, *see Berkemer*, 468 U.S. at 439, but he has not contested the Government's argument that he committed a crime by running away during the investigatory stop and refusing to comply with Sergeant Voigts's orders to halt. *See* Iowa Code § 719.1(1) ("A person who knowingly resists . . . anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . commits a simple misdemeanor."); *United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003) ("One is not free to leave a *Terry* stop until the completion of a reasonably brief investigation, which may include limited questioning."). Therefore, we conclude that Sergeant Voigts had the authority to arrest Bourrage. *See* Iowa Code § 804.7(1); *Atwater v. City of Largo Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Because Sergeant Voigts read Bourrage his *Miranda* warnings after lawfully arresting him, the district court did not err in denying Bourrage's motion to suppress his incriminating statement. *See United States v. Fellers*, 397 F.3d 1090, 1095 (8th Cir. 2005) ("Because the *Miranda* warnings give the suspect the information he needs to choose whether to exercise his right to remain silent, the suspect's choice to speak after receiving *Miranda* warnings is normally viewed as an 'act of free will.'") (quoting *Oregon v. Elstad*, 470 U.S. 298, 311 (1985)). We also hold that the search incident to arrest was lawful because Sergeant Voigts had probable cause to arrest Bourrage, *see United States v. Mendoza*, 421 F.3d 663, 668 (8th Cir. 2005), and that

the district court therefore did not err in denying Bourrage's motion to suppress the evidence obtained during the search.[2]

For the foregoing reasons, we affirm the judgment of the district court.

_____

[2]We also reject Bourrage's argument that Sergeant Voigts violated the Fourth Amendment's guarantee against unreasonable seizures by using a taser gun to subdue him. "We analyze Fourth Amendment excessive force claims under a reasonableness standard to determine whether, in light of the facts and circumstances, the officer's actions were objectively reasonable." *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008). In this case, Bourrage was attempting to evade a lawful arrest by continuing to run away from Sergeant Voigts and to ignore orders to stop. To prevent Bourrage from getting away, Sergeant Voigts used a single taser blast to subdue him. Under the circumstances, this use of force was objectively reasonable and did not violate the Fourth Amendment. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) ("Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or *attempting to evade arrest by flight*.'") (emphasis added) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because we conclude that Sergeant Voigts's use of force was reasonable, we need not address Bourrage's argument that suppression is an appropriate remedy for the use of excessive force in effecting an arrest.