FILED
United States Court of Appeals
Tenth Circuit

April 5, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

MICHAEL LYNN CRISP,

        Defendant-Appellant.

No. 09-5063
(D.C. No. 4:08-CR-00158-GKF-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **HOLLOWAY**, and **HOLMES**, Circuit Judges.

Defendant-Appellant Michael Lynn Crisp appeals the district court's denial

of his motion to suppress self-incriminating statements regarding his possession

and intent to distribute cocaine base. Mr. Crisp made these statements to law

enforcement officers after receiving the warnings prescribed by *Miranda v.*

*Arizona*, 384 U.S. 436 (1966). He contends that the district court should have

suppressed these statements because the officers elicited them through an

impermissible two-step interrogation technique, known as "*Miranda*-in-the-

---

    [*]   This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

middle" or "question first," in an effort to circumvent the strictures of *Miranda*.

We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's

order.

## BACKGROUND[1]

On August 10, 2008, Tulsa police officers stopped a car for speeding in the

3700 block of North Harvard Avenue in Tulsa, Oklahoma. Mr. Crisp, who was a

passenger, exited the car during the traffic stop and fled the scene on foot. After

a brief pursuit and scuffle, the officers apprehended Mr. Crisp and took him into

custody. The officers also recovered a small bag of marijuana along the route

that Mr. Crisp had taken while fleeing.

With Mr. Crisp in custody, officers visited the home of his mother. His

mother granted the officers permission to enter her home and told them that Mr.

Crisp had stayed with her for the past three or four days due to a death in the

family. She subsequently gave the officers oral and written consent to search her

home. During the ensuing search, officers seized approximately 680 grams of

cocaine base and digital scales, which were hidden in the broken sheet rock of the

garage ceiling. The officers also seized a shotgun from Mr. Crisp's bedroom.

While the officers searched his mother's home, Mr. Crisp was transported

to the Tulsa Police station. Once the officers had completed the search, Corporal

---

[1] When reviewing the denial of a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Gambino-Zavala*, 539 F.3d 1221, 1225 (10th Cir. 2008).

Helton and Corporal Francetic interviewed Mr. Crisp in the early morning hours of August 11. As the three men walked into the interview room, they bantered about the pursuit and how Mr. Crisp had pulled his hamstring as he fled from the officers. After they had settled into their respective chairs, Mr. Crisp asked if the female driver of the car was in trouble. Corporal Helton replied that she had gone home. Corporal Francetic then asked if she had smoked marijuana around him. As Corporal Francetic asked that question, he leaned slightly toward Mr. Crisp and sniffed, implying that he smelled burnt marijuana on him. Mr. Crisp admitted, "I was smoking weed before she picked me up." Def.-Aplt.'s Addendum of Exs., Ex. 3; *see id.*, Ex. 4 at 2. He proceeded to describe his social agenda for the evening, admit that he had been drinking liquor in the car, and opine that his female companion had been speeding.

At that point, Corporal Francetic interrupted Mr. Crisp to administer *Miranda* warnings. Following the warnings, Corporal Francetic asked Mr. Crisp if he understood his rights. Mr. Crisp responded, "[y]es, I do." *Id.*, Ex. 3; *see id.*, Ex. 4 at 4. The officers also delved into Mr. Crisp's ability to understand the warnings, asking him questions relating to his education and present sobriety. Mr. Crisp indicated that he understood the procedure and stated that "this ain't my first rodeo." *Id.*, Ex. 3; *see id.*, Ex. 4 at 3.

Once the officers had clarified that Mr. Crisp understood his rights, they questioned him about his criminal history. Mr. Crisp admitted that he had been

arrested for possession of marijuana and for trafficking powder cocaine. When Corporal Francetic remarked that he could smell marijuana on him, Mr. Crisp replied "[y]eah." *Id.*, Ex. 3; *see id.*, Ex. 4 at 3. The officers continued to explore Mr. Crisp's marijuana use and asked if he owned the marijuana found near the traffic stop. The discussion eventually turned to the cocaine base found at his mother's home. Mr. Crisp admitted to ownership of the cocaine base and stated that he intended to distribute it. Approximately twenty minutes into the interrogation, the officers gave Mr. Crisp a written *Miranda* waiver, reviewed it with him, and had him sign it. Mr Crisp and the officers spent much of the remainder of the interrogation discussing his potential cooperation with police and his prospects of leniency.

Mr. Crisp was indicted in the U.S. District Court for the Northern District of Oklahoma on one count of possession with intent to distribute approximately fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii). He filed a motion to suppress all of the evidence seized during the search of his mother's home, including the cocaine base and the digital scales. He also filed a separate motion to suppress his self-incriminating statements to law enforcement officers during his custodial interrogation. After an evidentiary hearing, the court denied both motions.

Mr. Crisp subsequently entered a conditional guilty plea. In the plea agreement, Mr. Crisp reserved the right to appeal the denial of his pretrial

motions pursuant to Federal Rule of Criminal Procedure 11(a)(2).  He received a

sentence of 276 months of imprisonment, ten years of supervised release, a fine of

$1750, and a special assessment of $100.  Mr. Crisp timely appealed from the

denial of the motion to suppress his statements.

## DISCUSSION

The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person

. . . shall be compelled in any criminal case to be a witness against himself."[2]

U.S. Const. amend. V.  Under *Miranda*, a suspect's statements are generally

inadmissible if law enforcement officers elicited them during a custodial

interrogation without giving the prescribed warnings and obtaining a waiver.  384

U.S. at 444, 478–79.  To determine whether a post-*Miranda* statement is

admissible when the suspect previously gave an unwarned statement, we apply

*Missouri v. Seibert*, 542 U.S. 600 (2004), and *Oregon v. Elstad*, 470 U.S. 298

(1985).

On appeal, Mr. Crisp argues that the district court erred in denying the

motion to suppress his post-*Miranda* statements regarding his possession and

intent to distribute cocaine base.  He contends that the law enforcement officers

subjected him to the "*Miranda*-in-the-middle" or "question-first" technique to

elicit these statements in violation of *Miranda*.  Mr. Crisp asserts that he initially

---

[2]     The Fourteenth Amendment incorporates provisions of the Fifth
Amendment and makes them applicable to the states.  *Malloy v. Hogan*, 378 U.S.
1, 6 (1964).

admitted to having smoked marijuana in response to questions about his female companion.[3] He claims that the officers interrupted this interrogation to administer his *Miranda* rights before resuming their questions about his marijuana use and expanding their questions to elicit self-incriminating statements about the cocaine base.

We hold that Mr. Crisp waived the "*Miranda*-in-the-middle" or "question-first" argument because he failed to raise it before the district court and has not shown good cause for this failure. Even if Mr. Crisp had not waived this argument, we conclude that he fails to show plain error.

## I.    Waiver

"'When a motion to suppress evidence is raised for the first time on appeal, we must decline review.'" *United States v. Hamilton*, 587 F.3d 1199, 1213 (10th Cir. 2009) (quoting *United States v. Brooks*, 438 F.3d 1231, 1240 (10th Cir. 2006)). Under Federal Rule of Criminal Procedure 12(e), "[a] party waives any Rule 12(b)(3) defense, objection, or request [for the suppression of evidence] not raised by the [pre-trial] deadline" established by the court. Fed. R. Crim. P.

---

[3]      Mr. Crisp argues that this first round of questioning amounted to custodial interrogation. At oral argument, the government asserted for the first time that the officers did not engage in "interrogation" because their questions were not "reasonably likely to elicit an incriminating response" under *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). We decline to address issues raised for the first time in oral argument. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir.) ("An argument made for the first time at oral argument . . . will not be considered."), *cert. denied*, 130 S. Ct. 742 (2009). Thus, we hold that the government waived this argument.

12(e); *see Hamilton*, 587 F.3d at 1213. "'[T]his waiver provision applies not only to the failure to make a pre-trial motion, but also to the failure to include a particular argument in the motion.'" *Hamilton*, 587 F.3d at 1213 (quoting *United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991)). "For good cause, the court may grant relief from the waiver." Fed. R. Crim. P. 12(e).

Mr. Crisp waived the "*Miranda*-in-the-middle" or "question-first" argument because he failed to raise it before the district court. In the motion to suppress his statements, Mr. Crisp argued that the officers had violated his privilege against self-incrimination under the Fifth and Fourteenth Amendments. Although Mr. Crisp couched this argument in terms of a *Miranda* violation, he asserted only that he did not knowingly and intelligently waive this privilege because he was under the influence of drugs or alcohol at the time of the custodial interrogation. At the suppression hearing, Mr. Crisp proffered no evidence on the "*Miranda*-in-the-middle" or "question-first" issue and limited his cross-examination to questions regarding whether he had disclosed his marijuana and alcohol use and had affirmatively waived his *Miranda* rights. Mr. Crisp also presented no argument on this issue at the suppression hearing, stating instead that the interrogation tape "speak[s] for itself." R., Vol. 2, Doc. 51, at 70. Finally, at oral argument before this court, Mr. Crisp acknowledged that he had not raised the "*Miranda*-in-the-middle" or "question-first" argument before the district court.

Mr. Crisp also fails to qualify for the narrow exception to this waiver rule. Although Federal Rule of Criminal Procedure 12(e) permits a court to grant relief "[f]or good cause," Fed. R. Crim. P. 12(e), "[r]elief under this narrow exception is rarely granted," *Hamilton*, 587 F.3d at 1216 (internal quotation marks omitted). Mr. Crisp may not avail himself of this exception because he never attempts to demonstrate good cause for his failure to raise the "*Miranda*-in-the-middle" or "question-first" argument before the district court. *See United States v. Banks*, 451 F.3d 721, 727–28 (10th Cir. 2006) ("[A] party's failure to raise a specific argument in a suppression hearing results in waiver on appeal unless the party is able to show cause why it failed to raise the argument below.").

## II.    Plain-Error Review

"[T]here is no appeal from violation of a waived right." *United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004). Although Federal Rule of Criminal Procedure 12(e) provides that "[a] party waives any Rule 12(b)(3) objection . . . not raised by the deadline the court sets under Rule 12(c)" without a showing of good cause, we have "acknowledge[d] that plain error review is a possible option under our precedent." *Hamilton*, 587 F.3d at 1216 n.9; *see Brooks*, 438 F.3d at 1240 n.4 (noting that "we have engaged in plain-error review even after a defendant has failed to make a motion to suppress evidence prior to trial."). Thus, we will review Mr. Crisp's "*Miranda*-in-the-middle" or "question-first" argument for plain error.

-8-

Under the plain-error doctrine, we will reverse the district court's judgment only if the party shows (1) an error; (2) that is plain, which means clear or obvious; (3) that affects substantial rights; and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Morris*, 562 F.3d 1131, 1133 (10th Cir. 2009) (internal quotation marks omitted); *accord United States v. A.B.*, 529 F.3d 1275, 1280 (10th Cir.), *cert. denied*, 129 S. Ct. 440 (2008). "The plain error standard presents a heavy burden for an appellant, one which is not often satisfied." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

In this action, Mr. Crisp challenges the district court's denial of the motion to suppress his self-incriminating statements regarding his possession and intent to distribute cocaine base. He contends that the district court should have suppressed these statements pursuant to (1) the five-factor test adopted by the plurality opinion in *Seibert*; (2) the intent-based test adopted by Justice Kennedy's concurring opinion in *Seibert*; or (3) the voluntariness test adopted by *Elstad*. We need not determine which of these three tests controls here, because we conclude that under any of the tests the district court did not commit clear or obvious error in finding that Mr. Crisp's self-incriminating statements were admissible. *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151–53 (10th Cir. 2006) (applying all three tests instead of determining whether to apply the

*Seibert* plurality, *Seibert* concurrence, or *Elstad*). Thus, Mr. Crisp cannot prevail under plain-error review.

### A.    *Seibert* **Plurality**

Mr. Crisp argues that the self-incriminating statements should be suppressed under the five-factor test adopted by the plurality opinion in *Seibert*. In *Seibert*, the plurality held that "[t]he threshold inquiry when interrogators question first and warn later is . . . whether it would be reasonable to find that . . . the warnings could function 'effectively' as *Miranda* requires." 542 U.S. at 611–12 (plurality opinion). The plurality established five "relevant facts that bear on whether *Miranda* warnings delivered midstream could be effective":

> [1] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second [rounds], [4] the continuity of police personnel, and [5] the degree to which the interrogator's questions treated the second round as continuous with the first.

*Id.* at 615. "These factors, all of which concern the relationship between the first and second interrogations, are intended to aid courts in determining whether an initial, unwarned interrogation operated to 'thwart *Miranda*'s purpose of reducing the risk that a coerced confession would be admitted.'" *Carrizales-Toledo*, 454 F.3d at 1150 (quoting *Seibert*, 542 U.S. at 617).

We conclude that, under the plurality's five-factor test, the district court did not commit clear or obvious error in denying Mr. Crisp's motion to suppress

-10-

his self-incriminating statements. The first factor favors the admissibility of the self-incriminating statements because the initial round of questioning lacked "completeness and detail." In response to a question from Mr. Crisp, Corporal Francetic asked whether his female companion had smoked marijuana around him. Mr. Crisp answered, "I was smoking weed before she picked me up." Def.-Aplt.'s Addendum of Exs., Ex. 3; *see id.*, Ex. 4 at 2. This brief question and response are not the kind of "systematic" or "exhaustive" interrogation that would thwart the purpose of a subsequent *Miranda* warning. *Seibert*, 542 U.S. at 616 (noting that "the questioning was systematic, exhaustive, and managed with psychological skill" and lasted for thirty to forty minutes); *see Carrizales-Toledo*, 454 F.3d at 1151–52 (concluding under the first factor that "[t]he brevity and spontaneity of [the] initial questioning reduced the likelihood that it undermined the subsequent *Miranda* warnings"); *see also United States v. Materas*, 483 F.3d 27, 29, 33 (1st Cir. 2007) (concluding that *Seibert* factor one supported admissibility where the police asked only "where the drugs were located . . . before explaining to Materas his rights in another location, fifteen minutes later"); *cf. United States v. Aguilar*, 384 F.3d 520, 525 (8th Cir. 2004) (concluding that, under *Seibert*, "the *Miranda* warnings between the two questioning sessions did not serve the purpose of the dictates in *Miranda*," where, *inter alia*, "the first questioning session consisted of more than routine booking questions, included

-11-

some good cop/bad cop questioning tactics, and lasted approximately ninety minutes").

The second factor also tends to favor the admissibility of the self-incriminating statements because the pre- and post-*Miranda* statements contain no overlapping content regarding Mr. Crisp's possession and intent to distribute *cocaine base*. Although the law enforcement officers asked Mr. Crisp about his marijuana use in the first and second interrogations, they did not question him about the cocaine base before administering the *Miranda* warnings. Unlike *Seibert*, where "there was little, if anything, of incriminating potential left unsaid" after the first interrogation, 542 U.S. at 616, Mr. Crisp provided the officers with "significant new information" regarding the cocaine base in the second, warned interrogation. *Carrizales-Toledo*, 454 F.3d at 1152; *see also United States v. Gonzalez-Lauzan*, 437 F.3d 1128, 1138 (11th Cir. 2006) (detecting little overlap under the second *Seibert* factor where the defendant made "[a]ll the detailed incriminating statements . . . after he had waived his *Miranda* rights"); *United States v. Fellers*, 397 F.3d 1090, 1098 (8th Cir. 2005) (concluding that the effectiveness of *Miranda* warnings was not vitiated where the second, warned interrogation "went well beyond the scope of [the defendant's] initial statements by inquiring about different coconspirators and different allegations"). The officers also did not ground their post-*Miranda* questions regarding cocaine base on information gleaned from Mr. Crisp's prior marijuana

-12-

use.  *Cf. United States v. Pacheco-Lopez*, 531 F.3d 420, 428 (6th Cir. 2008) (concluding that the second *Seibert* factor "support[ed] our finding that the warning was ineffective," where "the question regarding the transportation of cocaine was not anomalous . . . but was the next logical question based on the earlier statements").

The third and fourth factors appear to weigh against the admissibility of the self-incriminating statements.  In particular, the first and second interrogations occurred in the same interview room.  *See Aguilar*, 384 F.3d at 525 (holding that *Seibert* factor three cut in favor of finding a *Miranda* violation where the defendant's two interrogations occurred in the same room); *United States v. Heron*, 564 F.3d 879, 886 (7th Cir. 2009) (concluding that two interrogations occurring at the same police station leaned towards exclusion under *Seibert* factor three); *Pacheco-Lopez*, 531 F.3d at 427 (concluding that *Seibert* factor three counseled toward holding that a *Miranda*-in-the-middle warning was ineffective where both interrogations took place at the same kitchen table).  Likewise, although the officers interrupted the interrogation to administer the *Miranda* warnings, the break lasted only as long as necessary to read the warnings and ask a few follow-up questions to ensure Mr. Crisp's understanding of those warnings. *See Pacheco-Lopez*, 531 F.3d at 427 ("The interrogation was continuous—the break only lasted for the amount of time it took the investigators to read [the

defendant] the *Miranda* warning."). Furthermore, the same officers were present at each interrogation. *See id.*; *Aguilar*, 384 F.3d at 525.

Finally, the fifth factor tends to favor the admissibility of the self-incriminating statements because the law enforcement officers did not treat the interrogations as continuous *with respect to the cocaine base*. The officers used none of the pre-*Miranda* statements from the first interrogation to elicit the post-*Miranda* statements about the cocaine base in the second interrogation. *See Seibert*, 542 U.S. at 605, 616–17; *Carrizales-Toledo*, 454 F.3d at 1152; *Fellers*, 397 F.3d at 1098. Although Corporal Francetic referred back to Mr. Crisp's pre-*Miranda* admission regarding marijuana use while questioning him during the second interrogation about the marijuana found near the traffic stop, Mr. Crisp was not charged with a marijuana offense.

Thus, under the five-factor test of the *Seibert* plurality opinion, the record provides strong support for the view that the *Miranda* warnings functioned effectively in this case. Unlike in *Seibert*, the efficacy of the *Miranda* warnings would appear not to have been materially called into question because Mr. Crisp had not confessed to the possession and intent to distribute cocaine base prior to receiving the *Miranda* warnings. *Cf. Seibert*, 542 U.S. at 613 ("[T]he sensible underlying assumption is that with one confession in hand before the warnings, the interrogator can count on getting *its duplicate* . . . ." (emphasis added)). Based on this record, we may conclude with confidence that the district court's

ruling denying Mr. Crisp's motion to suppress did not amount to clear or obvious error.

## B.    *Seibert* **Concurrence**

Mr. Crisp also argues that the statements should be suppressed under Justice Kennedy's concurring opinion in *Seibert*.  Under the narrower concurring opinion, Justice Kennedy proposed an intent-based test that would apply only when "the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning."  *Id.* at 622 (Kennedy, J., concurring).  "When an interrogator uses this deliberate, two-step strategy, . . . postwarning statements that are related to the substance of prewarning statements must be excluded absent specific, curative steps."  *Id.* at 621.  If the interrogator has not deliberately violated *Miranda*, "[t]he admissibility of postwarning statements should continue to be governed by the principles of *Elstad*."  *Id.* at 622.

We conclude that, under Justice Kennedy's intent-based test, the district court did not commit clear or obvious error by refusing to grant the motion to suppress.  The record does not appear to reflect any indicia of deliberate action by the officers in violating Mr. Crisp's *Miranda* rights.  More specifically, the record contains insufficient evidence to suggest that the law enforcement officers deliberately engaged in the two-step interrogation technique.  The record does not indicate that the officers "intentionally withheld the *Miranda* warnings during the initial [brief] interrogation."  *Carrizales-Toledo*, 454 F.3d at 1153.  No coercion

-15-

appears in either the circumstances of the encounter or the nature of the questioning. *See United States v. Nunez-Sanchez*, 478 F.3d 663, 668 (5th Cir. 2007). To the contrary, the pre-*Miranda* statement occurred after the parties had bantered about the pursuit and in response to a question about the marijuana use of Mr. Crisp's female companion. *See id.* at 668–69 ("All evidence suggests that [the defendant] was calm and cooperative, and the agents did not act with aggressiveness or hostility."). The pre-*Miranda* statements also were unrelated to the post-*Miranda* statements regarding cocaine base. *See Gonzalez-Lauzan*, 437 F.3d at 1139. Therefore, under Justice Kennedy's intent-based test, we cannot conclude that the district court committed clear or obvious error in denying Mr. Crisp's motion to suppress.

**C.   *Elstad***

If neither *Seibert* test applies to this action, Mr. Crisp argues that the statements should be suppressed as involuntary under *Elstad*. Under *Elstad*, the admissibility of a post-*Miranda* statement turns on whether it was made knowingly and voluntarily. 470 U.S. at 309, 318. "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion" as to any post-*Miranda* statement. *Id.* at 314. The Court instead held that "[a] subsequent administration of *Miranda* warnings to a suspect who has given a

-16-

voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.*

Under the voluntariness test of *Elstad*, the district court did not commit clear or obvious error in denying the motion to suppress. As an initial matter, we must determine whether Mr. Crisp's pre-*Miranda* statement was voluntary. "Courts typically consider five factors in a voluntariness inquiry: (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment." *Carrizales-Toledo*, 454 F.3d at 1153 (alteration in original) (internal quotation marks omitted). Mr. Crisp was thirty-nine years old at the time of his arrest and was a high-school graduate. He made the initial self-incriminating statement regarding his recent marijuana use within a few hours after his initial detention and within a few minutes of the start of the interrogation. He also made this self-incriminating statement in response to a question about his female companion's marijuana use and in a relatively cordial interrogation environment. Although Mr. Crisp was not read his *Miranda* rights, he later acknowledged a familiarity with the criminal-justice system by stating that "this ain't my first rodeo." Def.-Aplt.'s Addendum of Exs., Ex. 3; *see id.*, Ex. 4 at 3. Mr. Crisp also was not subjected to any physical punishment or threats of punishment. Based on the totality of the circumstances, the pre-

-17-

*Miranda* statements clearly appear to be voluntary. Thus, if Mr. Crisp's pre-*Miranda* statements were voluntary, the subsequent administration of the *Miranda* warnings would make his post-*Miranda* statements admissible as long as he voluntarily waived his *Miranda* rights.

Mr. Crisp knowingly and voluntarily waived his *Miranda* rights. Corporal Francetic advised Mr. Crisp of his rights and asked him whether he understood them. Mr. Crisp responded affirmatively. The officers also asked Mr. Crisp several follow-up questions to ensure that he possessed the intelligence and sobriety to understand those rights. As noted above, Mr. Crisp even acknowledged a familiarity with the criminal-justice system, claiming that "this ain't my first rodeo." *Id.*, Ex. 3; *see id.*, Ex. 4 at 3. Finally, after Mr. Crisp discussed his connection to the cocaine base, the officers had him read and sign a written *Miranda* waiver. Accordingly, under *Elstad*'s test for admissibility, the district court did not commit clear or obvious error in denying the motion to suppress.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order.

Entered for the Court

JEROME A. HOLMES
Circuit Judge